UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| NORTH AVENUE CAPITAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br><br> RANGER SCIENTIFIC LLC, <br><br> Defendant. | CIVIL ACTION NO. 2:23-cv-00015 <br><br> JUDGE: |

**PLAINTIFF'S COMPLAINT**

Plaintiff North Avenue Capital, LLC ("Plaintiff" or "NAC"), by and through the undersigned counsel, files this Complaint against Defendant Ranger Scientific LLC ("Defendant" or "Ranger"), and in support thereof would respectfully show the Court as follows:

**NATURE OF ACTION**

1. NAC is a specialized commercial lender that funds loans from $1,000,000 to $25,000,000 through the USDA Business & Industry Loan program.

2. Ranger sought a $7.5 million loan from NAC to provide long-term financing for the development of its ammunitions manufacturing facility in Montgomery, West Virginia.

3. This action arises from Ranger's multiple breaches of the loan agreement with NAC, including its failure to make timely payments on and the accrual and calculation of interest on the $7.5 million loan to Ranger – as stated in the loan documents.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to 28 U.S.C. §1332, which confers original jurisdiction upon this Court in a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. As of

February 1, 2022, NAC charged Ranger $375,404.56 in interest and Ranger has alleged that these interest charges are improper or illegal. Thus, the amount in controversy exceeds $75,000.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, the $7.5 million loan funds were disbursed to develop Ranger's facilities in this District and Ranger's designated office is in this District.

## PARTIES

6. Plaintiff North Avenue Capital, LLC, is a Georgia limited liability company with its principal place of business in St. Johns County, Florida. Plaintiff North Avenue Capital, LLC, is a citizen of both Georgia and Florida. Plaintiff North Avenue Capital, LLC, does not maintain a place of business or perform business in West Virginia. North Avenue Capital, LLC's sole member is Veritex Community Bank, a Texas state-chartered bank, with its principal place of business located in Dallas County, Texas.

7. Defendant Ranger Scientific, LLC is a limited liability company doing business at its designated offices at 550 5th Avenue, Montgomery, Kanawha County, West Virginia, and organized under the laws of the State of West Virginia. Ranger Scientific may be served with process through its registered agent, United States Corporation Agents, Inc. at 1000 Colliers Way, Weirton, WV 26062. The members of Ranger Scientific LLC, as disclosed in public records are identified as follows:

    a. Daniel Pearlson is a citizen of West Virginia and resides in Charleston, West Virginia;

    b. Mark Ryan is a citizen of West Virginia and resides in Montgomery, West Virginia;

  c. Quincy Coal Company, a corporation organized under West Virginia law, with a principal place of business in Charleston, West Virginia;

  d. David Smith is a citizen of West Virginia and resides in Charleston, West Virginia; and

  e. Kathy Walker is a citizen of West Virginia and resides in Charleston, West Virginia.

8. The parties and interested persons in Plaintiff's Amended Complaint have complete diversity of citizenship. Defendant and its interested persons are citizens of West Virginia. Whereas Plaintiff and its interested persons are citizens of Texas, Georgia, and Florida.

## FACTUAL ALLEGATIONS

9. The relevant agreements at issue in this matter are as follows:

- Loan Agreement, dated October 9, 2020;
- Term Note, dated October 9, 2020;
- Controlled Account Agreement, dated October 9, 2020;
- Payment Reserve Account Agreement, dated October 9, 2020; and
- Deed of Trust dated October 9, 2020

(together with all instruments, documents and agreements referred to, contemplated therein, or securing any obligations set forth therein, collectively referred to as the "Loan Documents").

10. The **Loan Agreement** provides in pertinent part as follows: [1]

> 2.01 Loan.
>
> (a) Loan. The loan shall be in an amount not to exceed the principal sum of SEVEN MILLION FIVE HUNDRED THOUSAND and 00/100 Dollars ($7,500,000.00) (the "Loan") and shall bear interest at the Applicable Interest Rate on so much of the principal sum as shall be advanced pursuant to the terms of this Agreement and the Loan Documents.

---

[1] By quoting portions of the Loan Agreement, Plaintiff does not waive its right to rely on any other provisions of the Loan Agreement and has attached the Loan Agreement in its entirety as Exhibit A.

> 2.02    Promissory Note.
>
> (a)    The Loan shall be evidenced by a negotiable secured promissory note, duly executed by Borrower (herein called, together with any renewals and extensions thereof, the "Note"), dated of even date herewith, in the principal amount of the Loan and made payable to the order of the Lender. ==Principal and interest on the Note shall be calculated and due and payable in the amount, manner and at the times set forth therein, with final maturity of the Note being fifteen (15) years following the date thereof (the "Maturity Date").== The principal repayment period of the Note shall be amortized over a period of fourteen (14) years. The Applicable Interest Rate cannot be adjusted more often than quarterly. Interest shall be calculated on an Actual/360 basis.

> 6.01    Payment of Loan/Performance of Obligations. Borrower shall duly and punctually pay or cause to be paid the principal and interest of the Note in accordance with its terms and duly and punctually pay and perform, or cause to be paid and performed, all Obligations hereunder and under the other Loan Documents.

> 6.20    Payment Reserve Account Agreement. Borrower shall duly execute and deliver (cause to be executed and delivered) to Lender a Payment Reserve Account Agreement and shall fund the Payment Reserve Account with Loan funds in the amount of EIGHT HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($830,000.00). Said Payment Reserve Account shall be governed by the Payment Reserve Account Agreement, which is incorporated herein by reference as if fully set forth. Any default by Borrower under the Payment Reserve Account Agreement shall also be a default under this Agreement.

> 6.26    Controlled Account Agreement. Borrower shall duly execute and deliver (or cause to be executed and delivered) to Lender a Controlled Account Agreement and shall fund the Controlled Account with Loan funds. Said Controlled Account shall be governed by the Controlled Account Agreement, which is incorporated herein by reference as if fully set forth. Any default by Borrower under the Controlled Account Agreement shall also be a default under this Agreement.

> 6.11    Litigation and Attorney Fees. Borrower will pay promptly to Lender without demand, reasonable attorneys fees and all costs and other expenses paid or incurred by Lender in collecting or compromising the Loan or in enforcing or exercising its rights or remedies created by, connected with or provided in this Agreement or any other Loan Document, whether or not suit is filed.

11.    The **Term Note** provides in pertinent part as follows:[2]

---

[2] By quoting portions of the Term Note, Plaintiff does not waive its right to rely on any other provisions of the Term Note and has attached the Term Note in its entirety as Exhibit B.

> FOR VALUE RECEIVED, the undersigned RANGER SCIENTIFIC LLC, a West Virginia limited liability company (hereinafter referred to as "Maker"), promises to pay to the order of NORTH AVENUE CAPITAL, LLC (hereinafter referred to as "Payee", Payee, and subsequent holder(s) hereof, being hereinafter referred to collectively as "Lender"), at the office of Payee at 816 A1A North, Suite 304, Ponte Vedra, Florida 32082, or at such other place as Lender may designate to Maker in writing from time to time, the principal sum of SEVEN MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($7,500,000.00), or so much thereof as may be hereinafter disbursed hereunder, together with interest thereon, or on so much thereof as is from time to time outstanding and unpaid, from the date of each advance of principal, at the rates hereinafter set forth, in lawful money of the United States of America, which shall at the time of payment be legal tender in payment of all debts and dues, public and private, such principal and interest to be paid in the following manner, to wit:

Pursuant to the Term Note, interest accrued from the date of each advance of principal. Interest was calculated as per the following provision:

> The Interest Rate shall mean the floating and fluctuating rate per annum equal to the rate of interest published as the maximum prime interest rate in the Wall Street Journal (the "Prime Rate") plus TWO AND ONE-HALF (2.5%) percentage points ("Interest Rate"). The Prime Rate in effect as of the close of business on the first day each quarter (January 1, April 1, July 1 and October 1) shall be the applicable Prime Rate for that quarter in determining the applicable Interest Rate. If the Prime Rate is discontinued as a standard or becomes unascertainable, the Lender shall designate in writing to the Maker a comparable reference rate. Interest shall be calculated on the basis of 360 days per year for the actual number of days elapsed.
>
> The Interest Rate on the Closing Date (as defined in the Loan Agreement) shall be FIVE AND THREE-QUARTERS percent (5.75%).

Ranger agreed to start making interest only payments on the first day of the month following the Closing Date.

> Interest only payments shall be due and payable monthly on the 1st day of each month beginning on the 1st day of November, 2020 and continuing through and until the 1st day of October, 2021 at the Interest Rate as described herein.

Ranger agreed to pay NAC's reasonable attorneys' fees and costs:

> All parties liable for the payment of this Note agree to pay the Lender reasonable attorneys'

> fees and costs, whether or not an action be brought, for the services of counsel employed after maturity or Default to collect this Note or any principal or interest due hereunder, or to protect the security, if any, or enforce the performance of any other agreement contained in this Note or in any instrument of security executed in connection with this loan, including costs and attorneys' fees on any appeal, or in any proceedings under the United States Bankruptcy Code or in any post judgment proceedings. All parties liable for the payment of this Note agree to pay the Lender hereof reasonable attorney's fees for the services of counsel employed to collect this Note, whether or not suit be brought, and to indemnify and hold the Lender harmless against liability for the payment of state intangible, documentary and recording taxes, and other taxes (including interest and penalties, if any) which may be determined to be payable with respect to this Term Note and related transaction.

12. The **Controlled Account Agreement** provides in pertinent part as follows: [3]

> WHEREAS, as a condition of making the Loan, Lender is requiring Borrower to establish the Controlled Account.

> 2. Controlled Account.
>
> (a) Establishment; Funding. Upon the closing of the Loan, the parties shall establish the Controlled Account. The Loan Deposit shall be paid from the Loan funds into the Controlled Account at Closing.
>
> (b) Account. Borrower and Lender agree that Lender shall control all moneys deposited into the Controlled Account. No interest or earnings shall be payable to Borrower on the Controlled Account. Borrower agrees that the Controlled Account and the Controlled Account Funds (as defined below) are subject to the sole dominion, control, and discretion of Lender, or its respective successors or permitted assigns. Further, Borrower acknowledges that Controlled Account Funds may be used and applied in Lender's complete and sole discretion, subject only to the terms of this Agreement and provided it does not violate any applicable state or federal law.
>
> (c) Lender's Interest in the Account. Borrower represents that it has granted, or intends to grant, a security interest in the Controlled Account to Lender. Borrower hereby grants and/or confirms the security interest granted by Borrower to Lender in all of Borrower's right, title, and interest in and to the Controlled Account and all sums now or hereafter on deposit in or payable or withdrawable from the Controlled Account (the "Controlled Account Funds").
>
> (d) No Access to Controlled Account. Except as provided in Section 3, Borrower acknowledges and agrees that, subject to the terms hereof, neither Borrower nor any person claiming on or behalf of, or through, Borrower shall have any right, title, or interest, whether express or implied, in the Controlled Account or to withdraw or make use of any amounts from the Controlled Account.

---

[3] By quoting portions of the Controlled Account Agreement, Plaintiff does not waive its right to rely on any other provisions of the Controlled Account Agreement and has attached the Controlled Account Agreement in its entirety as Exhibit C.

"Loan Deposit" is defined in the Controlled Account Agreement as "the Construction Funds, the Equipment Funds, the Interest Funds, and the Working Capital Funds."[4] The total amount of the Loan Deposit was $6,018,969.29. With these funds, the parties agreed to use the $6,018,969.29 as follows:

> 3. **Use.**
>
> (a) Borrower or Borrower's representative may request disbursement of Construction Funds from the Controlled Account for construction purposes upon completion of the requirements outlined in Article IV of the Loan Agreement, which is incorporated herein by reference.
>
> (b) Borrower or Borrower's representative may request disbursement of Equipment Funds from the Controlled Account. Each request must be: (i) in a form approved by Lender; and (ii) submitted along with (a) a copy of the check payable to the applicable vendor or supplier and (b) a copy of a detailed invoice from such vendor or supplier corresponding with the payment to be made. Lender may approve said request in its sole discretion.
>
> (c) Borrower or Borrower's representative may request disbursement of Working Capital Funds from the Controlled Account. Each request must be submitted in the
>
> Page A-3
>
> form of Lender's Working Capital Disbursement Request template. Lender may approve such request in its sole discretion.
>
> (d) Borrower's representative may request funds from Lender in order to make interest-only payments due under the Note until the Interest Funds are fully expended. Alternatively, Borrower authorizes Lender to debit the amount of any payment due under the Term Note during the interest-only period from the Interest Funds until the Interest Funds are fully expended.

13. The **Payment Reserve Account Agreement** provides in pertinent part as follows:[5]

---

[4] *See Exhibit C, Controlled Account Agreement, ¶ 1.(j).*
[5] By quoting portions of the Payment Reserve Account Agreement, Plaintiff does not waive its right to rely on any other provisions of the Payment Reserve Account Agreement and has attached the Payment Reserve Account Agreement in its entirety as Exhibit D.

> 2. <u>Payment Reserve Account.</u>
>
>    (a) <u>Establishment; Funding.</u> ==The Payment Reserve Account shall be an account established and controlled by Lender and funded with the Payment Reserve Deposit.==
>
>    (b) <u>Account.</u> ==Borrower and Lender agree that Lender shall control all moneys deposited into the Payment Reserve Account.== The Payment Reserve Account shall be considered a separate fund and shall not be commingled with any other funds. No interest or earnings shall be payable to Borrower on the Payment Reserve Account. Borrower agrees that the Payment Reserve Account and the Payment Reserve Account Funds (as defined below) are subject to the sole dominion, control, and discretion of Lender, or its respective successors or permitted assigns.

Payment Reserve Deposit is defined as "the amount of Eight Hundred Thirty Thousand, and no/100 Dollars ($830,000)." [6]

14. On the Closing Date, NAC wired the $7.5 million in loan proceeds to Steptoe & Johnson's escrow account and paid other closing costs. Steptoe & Johnson served as the settlement agent for the Loan. The breakdown of the disbursed funds was stated on the Loan Closing Statement dated October 9, 2020.[7] As such, the full amount of the $7.5 million loan was disbursed at Closing for Ranger's exclusive use and benefit.

15. As of February 17, 2022, Ranger has alleged:

- NAC has overcharged Ranger interest under the terms of the loan documents.
- NAC has charged interest on the entire $7.5 million dollar loan in violation of the Loan Agreement.
- NAC has not disbursed funds as is the normal business practice, and required under the terms of the Loan Agreement, Term Note, Controlled Account Agreement, and Payment Reserve Account Agreement.
- NAC has overcharged Ranger $375,404.56 by charging interest on the face amount of the note regardless of whether funds have been disbursed or not.
- NAC is in complete control of all non-disbursed funds in which Ranger has "no right, title, or interest" as specified under the Loan Agreement.

---

[6] *See Exhibit D, ¶ 1.(f).*
[7] *See Exhibit E, Loan Closing Statement.*

- Ranger does not have access to the funds, and the loan documents explicitly state that interest may only be charged on disbursed funds.

16. Pursuant to the Loan Agreement, Ranger is required to tender monthly principal and interest payments totaling $132,415.40. See Term Note, Note Modification, and §§ 2.02 and 6.01 of the Loan Agreement.

17. Ranger has not made a payment since January 1, 2022.

18. Ranger is in further default of the Loan Documents pursuant to a number of performance covenants set forth in the Loan Documents, namely:

- Failure to provide NAC with the Annual Financial Statements of Borrower by April 1, 2022;[8]

- Failure to provide NAC with an Annual Compliance Certificate executed by Borrower's chief financial officer by April 1, 2022;[9]

- Failure to provide NAC with copies of Borrower's annual tax returns by June 2, 2022;[10]

- Failure to provide NAC with copies of each Guarantor's annual individually prepared financial statements and federal tax returns for the 2021 calendar year;[11]

- Failure to maintain a balance of $830,000 in the Payment Reserve Account; and

- Failure to use the land, real estate improvements, machinery & equipment, and working capital, which are the subject of the Loan, for stated purpose of operating an ammunitions manufacturing operation facility as expressly required under the USDA Conditional Commitment.

19. Ranger was notified of its Events of Default and given an opportunity to cure pursuant to notices dated June 3, 2022, July 15, 2022, October 7, 2022 and November 14, 2022, (the "Default Notices").

---

[8] See § 6.07(a) of the Loan Agreement
[9] See § 6.07(b) of the Loan Agreement
[10] See § 6.07(c) of the Loan Agreement.
[11] See § 6.07(d) of the Loan Agreement.

20. The November 14, 2022 Default Notice is attached hereto as **Exhibit F**.

21. Although repeatedly requested by Plaintiff to do so, Ranger has willfully failed and refused to remedy any of its defaults.

## **BREACH OF CONTRACT**

22. Plaintiff incorporates all allegations contained in the preceding paragraphs.

23. Plaintiff and Ranger are parties to a written, fully executed Loan Agreement and Term Note which contain express provisions for the monthly payment and interest.

24. At all material times, Plaintiff has performed its obligations under the Loan Agreement and Term Note.

25. Ranger breached the Loan Agreement by, *inter alia:*

- Failure to pay NAC monthly principal and interest payments totaling $132,415.40 since January 1, 2022;[12]

- Failure to provide NAC with the Annual Financial Statements of Borrower by April 1, 2022;[13]

- Failure to provide NAC with an Annual Compliance Certificate executed by Borrower's chief financial officer by April 1, 2022;[14]

- Failure to provide NAC with copies of Borrower's annual tax returns by June 2, 2022;[15]

- Failure to provide NAC with copies of each Guarantor's annual individually prepared financial statements and federal tax returns for the 2021 calendar year;[16]

- Failure to maintain a balance of $830,000 in the Payment Reserve Account; and

- Failure to use the land, real estate improvements, machinery & equipment, and working capital, which are the subject of the Loan, for stated purpose of operating an

---

[12] See Term Note, Note Modification, and §§ 2.02 and 6.01 of the Loan Agreement.
[13] See § 6.07(a) of the Loan Agreement
[14] See § 6.07(b) of the Loan Agreement
[15] See § 6.07(c) of the Loan Agreement.
[16] See § 6.07(d) of the Loan Agreement.

ammunitions manufacturing operation facility as expressly required under the USDA Conditional Commitment.

26. As a direct and proximate cause of Ranger's breaches, Plaintiff has incurred actual damages, in an amount to be proven at trial, which it is entitled to recover from Ranger.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order granting judgment in its favor and against Ranger in an amount to be proven at trial in excess of $100,000.00, and an award of prejudgment interest, plus costs of suit, and any and all other relief that this Court may deem appropriate under the circumstances.

## ATTORNEYS' FEES

27. Plaintiff seeks to recover its attorneys' fees incurred in conjunction with this action pursuant to the Loan Agreement and Term Note.

*[remainder of page intentionally left blank]*

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff North Avenue Capital, LLC, prays for judgment against Defendant Ranger Scientific, LLC for the following:

(1)　Actual damages in an amount in excess of the minimum jurisdictional limits of the Court;

(2)　Pre-judgment interest at the maximum rate allowed by law;

(3)　Post-judgment interest on the full amount of the Court's judgment, from the date of judgment until paid, at the maximum rate allowed by law upon a judgment by this court;

(4)　Reasonable and necessary attorneys' fees , costs and expenses of this suit, and all of its other costs and expenses related to the Loan Documents;

(5)　All such other and further relief to which Plaintiff may be entitled and this Court deems proper.

Dated: January 9, 2023.

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.

By: */s/ Trisha R. Hudkins*
John J. Richardson, Esquire
WV ID #13140
Trisha R. Hudkins, Esquire
WV ID #12667
48 14th Street, Suite 301
Wheeling, WV 26003
Telephone : (412) 456-8100
Facsimile : (412) 456-8135
Email: thudkins@bernsteinlaw.com
jrichardson@bernsteinlaw.com

and

BROWN FOX, PLLC

By: */s/ Brandi J. McKay*
BRANDI J. MCKAY
State Bar No. 24075380
DAVID S. DENTON
State Bar No. 24036471

>6303 Cowboys Way, Suite 450
>Frisco, Texas 75034
>Telephone: (972) 707-1861
>Facsimile: (214) 327-5001
>brandi@brownfoxlaw.com
>david@brownfoxlaw.com
>
>*Motion for Pro Hac Vice to be filed*
>
>**ATTORNEYS FOR PLAINTIFF**
>**NORTH AVENUE CAPITAL, LLC**