IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORTH AVENUE CAPITAL, LLC,

        Plaintiff,

v.                                    CIVIL ACTION NO.   2:23-cv-00015

RANGER SCIENTIFIC LLC,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff North Avenue Capital, LLC's ("NAC") Motion for Partial Summary Judgment, [ECF No. 27]. Defendant Ranger Scientific LLC ("Ranger") responded in opposition, [ECF No. 33], and NAC replied, [ECF No. 37]. For the reasons stated herein, Plaintiff's motion is **GRANTED**.

I.    Background

This case arises from a contractual dispute after NAC, a specialized commercial lender, entered into an agreement with Ranger to finance the development of an ammunition manufacturing facility in Montgomery, West Virginia. [ECF No. 1, ¶¶ 1–3]. On October 9, 2020, the parties agreed that NAC would provide Ranger with a $7.5 million loan to fund the facility, and the parties executed four separate agreements: a Loan Agreement, [ECF No. 1-1], a Term Note, [ECF No. 1-2], a Controlled Account Agreement, [ECF No. 1-3], and a Payment Reserve

Account Agreement, [ECF No. 1-4], (collectively, the "Loan Documents"). Together, the Loan Documents specify the parties' rights and obligations regarding the loan.

Things soon went south for North Avenue Capital and Ranger Scientific. The parties disputed the contract language that governed the calculation of the loan's interest. While Ranger believed that interest only accrued on funds actually disbursed to it, NAC asserted that interest immediately accrued on the entire $7.5 million. *See N. Ave. Cap., LLC. v. Ranger Sci. LLC*, No. 2:22-cv-00168, 2023 WL 5995501, at *2–3 (S.D. W. Va. Sept. 15, 2023). Based on this dispute, NAC filed an action seeking declaratory judgment in this court. *Id.* at *2.[1] Only three months later, NAC took a second shot at Ranger and filed the present lawsuit for breach of contract while the first action was still pending. NAC now alleges that—in addition to failing to make the required interest payments—Ranger has not complied with a number of performance covenants set forth in the loan documents. [ECF No. 1, ¶¶ 16–18]. NAC also states that Ranger has refused "to make *any* repayment" since January of 2022. [ECF No. 28, at 1 (emphasis in original)].

Ranger answered and filed a five-count counterclaim against NAC. *See* [ECF No. 7]. In addition to bringing a breach of contract claim, Ranger brought four tort claims against NAC alleging fraud, unjust enrichment, breach of fiduciary duty, and tortious interference. *Id.* at 21–26. These tort claims are the basis of NAC's motion

---

[1] In September 2023, I ruled on the first declaratory judgment action and held that the Loan Documents' language allowed interest to accrue only upon funds actually disbursed to Ranger. *N. Ave. Cap., LLC*, 2023 WL 5995501, at *7.

2

for partial summary judgment, and therefore, an in-depth discussion of each count is warranted.

In Count II, Ranger alleges that NAC committed fraud by "intentionally fail[ing] to disclose to Ranger that it intended to charge interest on the full face value of the loan . . . and denied Ranger information that is highly relevant to its decision concerning loan proposal." *Id.* at 22. Ranger asserts that it relied on NAC to make all material disclosures and that it would not have entered into a contract with NAC had it known of the interest provision. *Id.* at 23. Ranger also alleges NAC committed fraud because it did not create the Controlled Account or the Payment Reserve Account immediately upon closing as required under the Loan Documents and because NAC intentionally concealed actions "by failing to disclose documents and information that would have shown that [it] was in violation of the loan documents." *Id.*

In Count III, Ranger claims unjust enrichment. Specifically, Ranger contends that "[a]s a result of its wrongful and fraudulent acts and omissions," NAC obtained interest payments that exceeded the amount Ranger was legally obligated to pay. *Id.* at 24. Thus, Ranger states it would be inequitable if NAC were able to "retain these wrongfully obtained payments." *Id.*

Next, in Count IV of the counterclaim, Ranger alleges that NAC breached its fiduciary duty[2] to Ranger by "failing to appropriately calculate interest charges,

---

[2] Ranger argues that this purported fiduciary duty was created by the Loan Documents. [ECF No. 7, at 25].

3

improperly collecting moneys not due and owing," and refusing to either refund the overpayments or apply them to the principal amount. *Id.* at 25.

Finally, Ranger claims tortious interference in Count V. Ranger alleges that it had been in discussion with prospective clientele to sell its ammunition when NAC allegedly "fail[ed] to properly calculate interest, overcharg[ed] interest on moneys not disbursed, [and] breach[ed] its contractual obligations to Ranger." *Id.* at 25–26. This conduct, according to Ranger, "intentionally and materially delayed Ranger's business operations by starving it of necessary funds," and caused Ranger to lose financial compensation from the missed opportunities with its prospective clientele. *Id.* at 26.

Conceding that there are factual disputes regarding each party's breach of contract claim, NAC has moved for partial summary judgment only with respect to these four tort claims. [ECF No. 28, at 4]. NAC argues that three of the noncontractual counterclaims—fraud, breach of fiduciary duty, and tortious interference—are barred by West Virginia's "gist of the action" doctrine because the alleged breaches arise from the contractual relationship. *Id.* at 7. Because Counts II, IV, and V allegedly arise from the contract dispute between the parties, NAC argues that Ranger is simply "recasting" its breach of contract allegations as torts to receive duplicative relief. *Id.* at 8. Finally, NAC argues that Count III—unjust enrichment— must fail because an express contract exists relating to the same subject matter. *Id.* at 10.

4

Ranger responded in opposition, stating that its "tort claims are clearly damages arising from the previous [declaratory] action decision of this court."[3] [ECF No. 33, at 4]. It then explains that the "gist of the action" doctrine does not apply because the claims are grounded in fraud, breach of fiduciary duty, and tortious interference rather than arising from the contract itself. *Id.* at 5. Last, Ranger states that its unjust enrichment claim "spurs from the counterclaim allegations regarding fraud." *Id.* at 6. Although Ranger concedes that individuals cannot recover under contract and quasi-contract doctrines, it asserts that it can still plead both theories of recovery. *Id.* at 7. NAC replied, [ECF No. 37], and the matter is ripe for adjudication.

## II. Legal Standard

To obtain partial summary judgment, the moving party must show (1) that there is no genuine issue as to any material fact and (2) that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). The moving party may meet its burden of showing that no genuine issue of material fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex*

---

[3] I briefly note that Ranger filed its counterclaim on March 24, 2023. As I did not make my ruling in the declaratory judgment case until September 18, 2023, Ranger's counterclaim could not *arise from* my previous decision.

5

*Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

### III. Discussion

NAC asserts that Counts II through V must be dismissed because they are either barred by the "gist of the action" doctrine or, alternatively, cannot prevail in the face of the express contract. Because there are no alleged or actual disputes of material fact as to these counts, I will proceed to determine whether NAC is entitled to judgment as a matter of law on each count.

#### A. The Gist of the Action Doctrine

Under West Virginia's "gist of the action" doctrine, an action in tort cannot "arise for breach of contract unless the action in tort would arise independent of the existence of the contract." Syl. Pt. 9, *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619 (W. Va. 2002). In other words, whether a tort and a breach of contract claim can coexist depends on "whether the parties' obligations are defined by the terms of the contract." *Soyoola v. Oceanus Ins. Co.*, 986 F. Supp. 2d 695, 707 (S.D. W. Va. 2013) (quoting *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013)). Under this doctrine, tort recovery will be barred so long as one of the following factors is demonstrated:

6

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Tri-State Petroleum Corp. v. Coyne*, 814 S.E.2d 205, 218 (W. Va. 2018). Such tort claim may only be pursued if the tort action would arise independent of the contract. *Blackwater Props. LLC v. Range Resources-Appalachia, LLC*, No. 1:10CVC103, 2011 WL 1706521, at *6 (N.D. W. Va. May 5, 2011). Although a tort can "grow[] out of a contract," it must still "possess all of the essential elements of tort." *Lockhart*, 567 S.E.2d at 624 (citing 86 C.J.S. *Torts* § 4 (1997)). NAC asserts that this doctrine bars three of Ranger's tort counterclaims.

  1. *Count II: Fraud*

Under West Virginia law, a plaintiff can bring a fraud claim by establishing "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." Syl. Pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66 (W. Va. 1971) (quoting *Horton v. Tyree*, 139 S.E. 737, 738 (W. Va. 1927)). "Fraud cannot be predicated on a promise not performed." Syl. Pt. 2, *Gaddy Eng'g Co.*, 746 S.E.2d 568. Instead, the party must have made "a false assertion in regard to some *existing* matter by which a party is induced." *Id.* (emphasis in original) (quoting Syl. Pt. 1, *Love v. Teter*, 24 W. Va. 741 (W. Va. 1884)). Fraud may be an exception to the "gist of the action" doctrine if the

claim is based "on expressions of intention if a party lacks such intent to fulfill the promise at the time it was made." *Soyoola*, 986 F. Supp. 2d at 708 (internal markings and quotations omitted).

Here, the "gist of the action" doctrine bars Ranger's fraud claim. Ranger first claims that NAC failed to disclose that it intended to charge interest the full amount of the loan, and had NAC made such disclosure, Ranger "would not have consummated the loan agreement with NAC." [ECF No. 7, at 22–23]. However, the Loan Documents contemplated Ranger paying interest on the loan. The Loan Agreement stated that the loan "shall be in an amount not to exceed the principal sum of [$7,500,000] and *shall bear interest* at the Applicable Interest Rate on so much of the principal sum as shall be advanced." [ECF No. 1-1, ¶ 2.01 (emphasis added)]. The Term Note, as the secured promissory note, provided that Ranger "promises to pay . . . the principal sum of [$7,500,000], or so much thereof as may be hereinafter disbursed hereunder, together with interest thereon . . . ." [ECF No. 1-2, at 2]. Given these two provisions, along with others in the contract, it cannot be said that NAC intentionally failed to communicate that it intended to charge interest. NAC did disclose in the Loan Documents that it intended to charge interest, and the parties instead disagreed about the meaning of these provisions; NAC asserted that this language allowed them to charge interest on the entire loan, and Ranger believed otherwise. This contractual dispute was not based on any fraudulent expression by NAC and was later resolved by this court in the earlier declaratory judgment action.

8

Ranger also asserts that NAC committed fraud because it "intentionally concealed" that it did not create or fund the Controlled Account or Payment Reserve Account as required under the loan document at the time of closing. [ECF No. 7, at 23]. This allegation is based on NAC's failure to perform its obligations under the contract. The terms of the contract set out the parties' responsibilities regarding account creation, and "fraud cannot be predicated on a promise not performed." Syl. Pt. 2, *Gaddy Eng'g Co.*, 746 S.E.2d 568. Thus, this count is barred by the "gist of the action" doctrine.

### 2. Count IV: Breach of Fiduciary Duty

Next, Ranger's counterclaim for breach of fiduciary duty is also barred. A violation of a fiduciary duties "may result from oppressive conduct, which is conduct that departs from the standards of good faith and fair dealing which are inherent in the concept of a fiduciary relationship." Syl. Pt. 3, *Masinter v. WEBCO Co.*, 262 S.E.2d 433 (W. Va. 1980). The Supreme Court of Appeals of West Virginia has found that the "gist of the action" doctrine does not bar a claim for a breach of fiduciary duty if the parties' fiduciary obligations exist independently of the contractual agreements. *Tri-State Petroleum Corp.*, 814 S.E.2d at 218 (finding that the fiduciary duties here were shaped by both the agreements and the law itself). However, if "a complaint presents all of the alleged breaches of the parties' contract also as breaches of fiduciary duties, then the gist of the action doctrine may bar the plaintiff's tort claim." *Id.* at 218–19 (citing *Gaddy Eng'g Co.*, 746 S.E.2d at 577).

9

Such is the case here. Absent the Loan Documents, the parties are not in a fiduciary relationship. As Ranger admits, the alleged fiduciary duty only exists because of the contract. *See* [ECF No. 7, at 25 ("The loan documents created a fiduciary duty between NAC and Ranger.")]. Ranger's alleged liability "arises solely from the contractual relationship between the parties." *See Tri-State Petroleum Corp.*, 814 S.E.2d at 218 (quoting *Gaddy Eng'g Co.*, 746 S.E.2d at 586); *compare* [ECF No. 7, at 21–22 ("NAC has materially breached the loan agreement by . . . improperly charging interest . . .; collecting interest on charges over and above interest that it was legally entitled to collect; [and] failing to correct the interest overcharges or failing to attribute the overcharges")] *with id.* at 25 ("NAC breached its fiduciary duty . . . by failing to appropriately calculate interest charges, improperly collecting moneys not due and owing, and failing or refusing to apply such overpayments . . . to the principal amount owed."). This tort claim essentially duplicates the breach of contract claim and therefore is barred by the "gist of the action" doctrine. NAC is entitled to judgment as a matter of law as to Count IV.

    3. *Count V: Tortious Interference*

NAC next asserts that Ranger's claim for tortious interference is also barred because it alleges the "exact same underlying obligations related to the loan interest." [ECF No. 28, at 5]. Ranger does not allege that NAC interfered with executed contracts but instead that NAC's conduct caused them to "lose substantial goodwill it had developed with *prospective* clientele." [ECF No. 7, at 26 (emphasis added)]; *see id.* ("Ranger also lost out on substantial opportunities to provide its *prospective*

10

*clientele* with much needed ammunition, thereby causing Ranger to lose out on substantial financial compensation for such products.") (emphasis added). Thus, its allegation is for tortious interference with a prospective business contract.

To state a claim for tortious interference with a prospective business contract, a party must prove the "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." *Blackwater Props., LLC*, 2011 WL 1706521, at *8 (internal markings omitted) (quoting *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 314 S.E.2d 166, 173 (W. Va. 1983)).

Here, the basis of the tortious interference claim is the allegation that NAC "starv[ed] [Ranger] of necessary funds" for its business operations. [ECF No. 7, at 26]. This rests wholly on the breach of contract claim and the interest calculation dispute. *See id.* ("Through its conduct of . . . breaching its contractual obligations . . . , NAC intentionally and materially delayed Ranger's business operations."). In this count, Ranger is essentially attempting to explain the extent of the harm caused by NAC's alleged breach of contract. Any liability, however, would arise from the contract, which renders the claim barred by the "gist of the action" doctrine.

### B. Count III: Unjust Enrichment

Finally, Ranger's counterclaim for unjust enrichment fails because the parties have an express contract. West Virginia law provides that unjust enrichment "occurs when [a person] has and retains money or benefits which in justice and equity belong

11

to another." *Dunlap v. Hinkle*, 317 S.E.2d 508, 512 n.2 (W. Va. 1984) (quoting *Com. Fixtures and Furnishings, Inc. v. Adams*, 564 P.2d 773, 776 (Utah 1977)). "An express contract and an implied contract, relating to the same subject matter, cannot co-exist." *Case v. Shepherd*, 84 S.E.2d 140, 143 (W. Va. 1954); *see also* Syl. Pt. 2 *Gulfport Energy Corp. v. Harbert Priv. Equity Partners, LP*, 851 S.E.2d 817, 818 (W. Va. 2020) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). An unjust enrichment claim is by nature quasicontractual, and therefore "it may not be brought in the face of an express contract." *Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (quoting *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988)). "[U]njust enrichment does not exist to provide an alternative means of recovery for breach of contract, nor does it exist to reduce contract disputes to a question of whether one party benefitted from the other party's performance." Syl. Pt. 3, *Gulfport Energy Corp.*, 851 S.E.2d 817.

Ranger asserts in its unjust enrichment claim that "[i]t would be inequitable for NAC to retain" the "interest payments that were over and above what Ranger was legally obligated to pay." [ECF No. 7, at 24]. An express contract exists concerning the interest payments. Although Ranger insists that it can plead both theories in the alternative, there is no dispute that a contract exists. NAC's complaint states that it and "Ranger are parties to a written, fully executed Loan Agreement and Term Note which contain express provisions for the monthly payment and interest." [ECF No. 1,

¶ 23]. Ranger admits this fact in its answer. [ECF No. 7, at 4 ("Defendant admits that the parties herein are parties to a contract.")]. The contracts between the parties—here, the Loan Documents—and Ranger's unjust enrichment claim both relate to the loan's interest payments and concern the same subject matter. As such, NAC is entitled to judgment as a matter of law as to Count III because the unjust enrichment claim cannot survive in the face of the expressed contract.

### 4. Conclusion

For the foregoing reasons, NAC's Motion for Partial Summary Judgment, [ECF No. 27], is **GRANTED**. Counts II, III, IV, and V of Ranger's counterclaim, [ECF No. 7], are **DISMISSED**. NAC's breach of contract claim and Ranger's breach of contract counterclaim remain pending. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 9, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE