IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORTH AVENUE CAPITAL, LLC,

        Plaintiff,

v.                      CIVIL ACTION NO.   2:23-cv-00015

RANGER SCIENTIFIC LLC,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff North Avenue Capital, LLC's ("NAC") Amended Motion to Exclude Daniel Pearlson's Testimony on Defendant's Lost Profit Damages. [ECF No. 30].[1] Defendant Ranger Scientific LLC ("Ranger") responded in opposition, [ECF No. 38], and NAC replied, [ECF No. 39]. For the reasons stated herein, NAC's motion is **GRANTED**.

I.    Background

This action stems from a dispute between NAC and Ranger regarding the funding of an ammunitions manufacturing facility in Montgomery, West Virginia. NAC, a specialized commercial lender, entered into an agreement with Ranger to finance the manufacturing facility. [ECF No. 1, ¶¶ 1–3]. NAC extended to Ranger a

---

[1] One week prior, NAC filed its original Motion to Exclude Daniel Pearlson's Testimony on Defendant's Lost Profit Damages. [ECF No. 29]. Because of the present amended motion, I **DENY as moot** NAC's first motion. [ECF No. 29].

$7.5 million loan, and the parties executed four agreements (collectively, the "Loan Documents") that specified the parties' rights and obligations regarding the loan. *See* [ECF Nos. 1-1, 1-2, 1-3, 1-4].

Soon after executing the agreements, the parties disagreed on how the loan interest was to be calculated. Ranger believed the interest accrued only on funds actually disbursed to it, whereas NAC asserted that interest immediately accrued on the entire §7.5 million loan. NAC filed a declaratory judgment action due to this dispute, and I held that the language of the contract allowed interest to accrue only upon funds actually disbursed. *N. Ave. Cap., LLC. v. Ranger Sci. LLC*, No. 2:22-cv-00168, 2023 WL 5995501, at *2–3 (S.D. W. Va. Sept. 15, 2023). While that action was pending, NAC brought the present action against Ranger for breach of contract, alleging that Ranger has not complied with a number of performance covenants. [ECF No. 1, ¶¶ 16–18]. Ranger filed a counterclaim for breach of contract.[2] [ECF No. 7, at 21].

NAC now seeks to exclude Daniel Pearlson's testimony on lost profit damages under the Federal Rules of Evidence, the strictures of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny. [ECF No. 30]. Mr. Pearlson, as the Chief Executive Officer and owner of Ranger, was deposed as Ranger's corporate representative. [ECF No. 31, at 2]. NAC alleges that Mr. Pearlson is neither qualified as an expert nor designated as one in this case, and thus he is not able to offer

---

[2] In its counterclaim, Ranger also alleged that NAC had committed four torts: fraud, tortious interference, breach of fiduciary duty, and unjust enrichment. *See* [ECF No. 7, at 21–26]. I have since dismissed these four counts. *See* [ECF No. 58].

2

testimony regarding lost profit damages. *Id.* NAC also asserts that Ranger did not specifically plead lost profits in its counterclaim, and therefore Ranger cannot now offer testimony about lost profit damages. *Id.* at 1; [ECF No. 39, at 1–2].

Ranger responded in opposition. [ECF No. 38]. First, it stated that because lost profits "are damages and not claims," they did not have to be pleaded in the counterclaim. *Id.* at 1. Next, Ranger asserts that Mr. Pearlson does not need to be designated as an expert on lost profit damages because he has actual knowledge as the CEO of Ranger. *Id.* at 24. Regardless, however, Ranger alleges that Mr. Pearlson does have "the knowledge, skill, experience, training, or education necessary to offer opinion testimony on the alleged lost profits." *Id.* at 5.

NAC replied, asserting again that lost profits are special damages and thus need to be pleaded under Rule 9(g) of the Federal Rules of Civil Procedure, which Ranger did not do. [ECF No. 39, at 1]. The matter is now ripe for review.

## II. Legal Standard

The Federal Rules of Civil Procedure govern pleadings in federal court. *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 725 (4th Cir. 2014) (citing *Hogan v. Wal-Mart Stores, Inc.*, 167 F.3d 781, 783 (2d Cir. 1999)). The Federal Rules provide that "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). Special damages are those that are not the "ordinary result" of the alleged wrongful conduct. *Carnell Constr. Corp.*, 745 F.3d at 725 (citations omitted). The primary purpose of this rule is to "inform defending parties as to the nature of the damages claimed in order to avoid surprise[,] and to

inform the court of the substance of the complaint." *Id.* (quoting *Great Am. Indem. Co. v. Brown*, 307 F.2d 306, 308 (5th Cir. 1962)).

### III. Discussion

The question before the court is whether lost profit damages are considered special damages that must be specifically pleaded in accordance with Rule 9(g). Although the Federal Rules provide the procedural requirements for pleading damages, state law determines the nature of damages sought. *Id.* The parties' choice of law provision in the Loan Documents states that the substantive law of West Virginia governs the agreements. [ECF No. 1-1, at 37]. Under West Virginia law, the issue of whether contractual damages are direct or consequential is a question of law. *C&O Motors Inc. v. Gen. Motors Corp.*, No. 2:05-0835, 2007 WL 9717826, at *2 (S.D. W. Va. Feb. 22, 2007). Parties may recover damages in a breach of contract action when, "according to the usual course of things, [the damages] result from such breach of contract." *U.S. for Use of Westinghouse Elec. Corp. v. Marietta Mfg. Co.*, 339 F. Supp. 18, 24 (S.D. W. Va. 1972) (noting that West Virginia courts have adopted and applied the rule set out in *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Reprint 141 (1854)). Parties may only recover damages in special circumstances if such circumstances "were communicated by the plaintiff to the defendant, and thus known to both parties," and the damages which resulted would ordinarily follow under these known circumstances. *Id.* However, if a party who breaches a contract is unaware of such special circumstances, then it is liable only for the amount which would arise generally. *Id.*; *see also Am. Sur. Co. v. Wheeling Structural Steel Co.*, 114 F.2d 237,

239–40 (4th Cir. 1940).

Under West Virginia law, "[l]ost profits are special damages which can be awarded only when they are the proximate result of the defendant's wrongdoing." *Keister v. Talbott*, 391 S.E.2d 895, 901 (W. Va. 1990) (first citing *Red Lobster Inns of Am., Inc. v. Laws. Title Ins. Corp.*, 656 F.2d 381 (8th Cir. 1981) (affirming the award of lost profits based in tort); and then citing *Safeco Title Ins. Co v. Reynolds*, 452 So.2d 45 (Fla. 2d Dist. App. 1990) (stating that an insured owner may be able to recover special damages such as lost profits in a breach of contract case)).

Because West Virginia law characterizes lost profits as special damages, and federal procedural law applies to a party's pleadings, Ranger must plead lost profits as an item of special damage. It has not done so in this case. *See* [ECF No. 7, at 10–27]. Further, in its prayer for relief, Ranger only seeks "judgment for damages" including pre- and post-judgment interest, attorney's fees, and punitive damages. *Id.* at 26–27. Regardless, Ranger does not satisfy West Virginia law because it has produced no evidence that such special circumstances were contemplated by the parties when they executed the Loan Documents. Ranger, likewise, has never asserted whether the lost profit damages it seeks are based on its breach of contract claim or one of the alleged (but since dismissed) torts in its counterclaim. Allowing Ranger to recover for special damages[3] without ever pleading it would run afoul of

---

[3] Notably, neither Ranger, NAC, nor Mr. Pearlson state with certainty the amount of lost profit damages claimed. In his deposition, Mr. Pearlson admits that he has not calculated Ranger's lost profits. [ECF No. 31-2, at 16]. He does, however, offer a more in-depth explanation of Ranger's alleged lost profit damages. He explains that, if sold, the ammunition would have yielded a net profit of approximately 40 to 45 cents per unit. [ECF No. 31-2, at 13]. The damages would be calculated by

Rule 9(g). As such, Ranger cannot offer testimony on lost profit damages.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Amended Motion, [ECF No. 30], is **GRANTED**. Plaintiff's original motion, [ECF No. 29], is **denied as moot**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 16, 2024

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

"tak[ing] 120 million and . . . multiply[ing] it times 40 cents." *Id.* Doing the math, this yields lost profit damages of at least $48 million. Mr. Pearlson also explained that he believed that his company's valuation would have been $169,400,000. *Id.* at 14.