IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORTH AVENUE CAPITAL, LLC,

          Plaintiff,

v.                                          CIVIL ACTION NO. 2:23-cv-00015

RANGER SCIENTIFIC LLC,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Plaintiff's Renewed Motion for Judgment as a Matter of Law or in the Alternative Motion for a New Trial, [ECF No. 101]. The Defendant responded, [ECF No. 103], and the Plaintiff replied, [ECF No. 104]. The motion is ripe for review.

This case is simple: Plaintiff North Avenue Capital, LLC ("NAC") loaned Defendant Ranger Scientific LLC ("Ranger") $6,919,914.97. Ranger made two payments on that loan, totaling a little more than $130,000. A jury found that although Ranger had *breached* its agreement to repay the loan, NAC suffered no damages. This is clearly against the weight of the evidence. Therefore, the Plaintiff's motion is **GRANTED**, the jury's verdict is **SET ASIDE**, judgment is entered **in favor of the PLAINTIFF**, and the Plaintiff is **awarded $8,174,371.04.**

    I.        LEGAL STANDARD

"The Federal Rules of Civil Procedure empower district courts to direct the entry of judgment before, during, or after trial." *Dupree v. Younger*, 598 U.S. 729, 731 (2023). Federal

Rule of Civil Procedure 50(b) permits a movant, after the verdict is rendered, to "file a renewed motion for judgment as a matter of law" and "include an alternative or joint request for a new trial under Rule 59." The court may (1) deny the motion and maintain the jury's verdict, (2) grant the motion and order a new trial, or (3) "direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b)(1)–(3).

## II.  BREACH OF CONTRACT

The evidence at trial showed that Ranger repaid only a minimal amount of its loan to NAC. The jury, however, found that NAC was not damaged as a result of Ranger's breach. The jury's verdict is not supported by the evidence.

"A Rule 50(b) motion should be granted if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings." *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 279 (4th Cir. 1999). Drawing all reasonable inferences in favor of the non-moving party, the court must direct a verdict if "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023) (The jury's verdict will be upheld unless "the *only* conclusion a reasonable jury could have reached is one in favor of the moving party." (quoting *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 147 (4th Cir. 2008)).

To bring a renewed motion under Rule 50(b), a party must have made an initial motion under Rule 50(a). Fed. R. Civ. P. 50. The motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2). Ranger argues that NAC's motion must be denied because NAC failed to make a proper Rule 50(a) motion. I disagree.

2

The parties presented thorough arguments for their own motions and counterarguments against the other party's motion for judgment as a matter of law. [ECF No. 94, at 64–79] ("*Transcript, vol. 2*"). NAC's breach of contract claim, Ranger's counterclaim, and Ranger's affirmative defenses naturally overlap. I heard full argument on all the issues, took time to consider the arguments, and even ruled on Ranger's counterclaim. *Transcript, vol. 2*, at 64–85. NAC's initial motion for judgment as a matter of law was clear: it sought a judgment of more than $8 million based primarily on Exhibit 101—a master spreadsheet of payments, expenses, and interest—under West Virginia common law breach of contract.[1] *Transcript, vol. 2*, at 78–79. I am satisfied that NAC properly presented its motion, and it is permitted to renew the motion.

Now, I turn to the merits. To succeed on a claim for breach of contract, a plaintiff must prove "the formation of a contract, a breach of the terms of that contract, and resulting damages." *Snerberger v. Morrison*, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015) (citing Syl. Pt. 1, *State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 565, 759 S.E.2d 795, 796 (2014)). In this case, the jury found that although Ranger breached its contract with NAC, NAC did not suffer resulting damages.

The jury verdict cannot be reconciled with the evidence. Under the Loan Agreement, [ECF No. 95-3, at 5] ("*Loan Agreement*")[2], NAC, the lender, agreed to loan Ranger, the borrower, up to $7.5 million. *See also* [ECF No. 95-4] ("*Term Note*"). Ranger received $6,919,914.97, the outstanding principal balance on the loan. The amount would "bear interest," and Ranger would use the proceeds for "property acquisition, construction costs, machinery & equipment, working

---

[1] Considering all of this, it makes sense that early into NAC's motion, I said, "Yeah, I got that." [ECF No. 94, at 79:2]. It was, and remains, clear to me what NAC argued and why it believed it was entitled to judgment as a matter of law.

[2] ECF cites refer to the CM/ECF number given to each document. It can be found in blue at the top of every document filed on the docket. An ECF document number, followed by a hyphen and number, indicates the CM/ECF designation of an exhibit, which should not be confused with the exhibit name and number given at trial.

3

capital, debt service reserves, and fees and costs associated with the Loan." *Loan Agreement*, at 5. Ranger also promised to repay the loan to NAC, as well as any interest, over 180 months. *Term Note*, at 1. This was the bargained-for exchange the parties made, which no one disputes.

Indeed, Ranger received the benefit of its bargain. The Loan Closing Statement, admitted into evidence, shows $7.5 million disbursed for Ranger's benefit. [ECF No. 95-8]. The outstanding and unpaid principal balance, a total of $6,919,914.97, includes expenses for working capital, [ECF Nos. 95-26, 95-29, 95-30, 95-33, 95-34, 95-36, 95-38, 95-40], and machinery and equipment, [ECF Nos. 95-28, 95-32, 95-35, 95-39, 95-42, 95-43, 95-45, 95-47]. *See also* [ECF No. 96-52, at 27] (tracking disbursement of the funds for the benefit of Ranger, including a daily record of the amount given to Ranger, the use of those funds, interest accrual, and any loan repayment by Ranger).

There is no dispute that Ranger received funds under the Loan Agreement. In their briefs on the pending motion, neither party asserts that Ranger did not receive money. [ECF Nos. 102–104]. NAC corporate representative Mr. Leo Story testified on cross-examination that NAC funded Ranger $7.325 million, and roughly $6.1 million was directly received by Ranger. *Loan Agreement*, at 132–34. Ranger chairman and CEO Dan Pearlson testified that Ranger received "directly or indirectly" approximately $6 million. *Transcript, vol. 2*, at 26:10–14. In fact, throughout the majority of the life of the loan, NAC never refused a disbursement requested by Ranger. *Transcript, vol. 2*, at 29–30. This was true even as the interest rate became disputed between the parties.[3]

---

[3] This fact greatly simplified the case. Based on Ranger's knowledge of the disputed interest rate and its continued receipt of the benefit of its bargain, I granted NAC's motion for judgment as a matter of law on Ranger's counterclaim and struck Ranger's affirmative defenses. *See* [ECF No. 94, at 79–84] (fully explaining the reasons on the record); *see also* [ECF No. 97]. This ruling has not been challenged in any post-trial motion.

4

Similarly, there is no dispute that Ranger made only *two* payments on the loan. Mr. Story testified on direct examination that "Ranger made two payments. One in November of 2021 and one in December of 2021. They totaled approximately $130,000. Those are the only funds that came directly from Ranger on a payment." [ECF No. 93, at 159:8–14] ("*Transcript, vol. 1*"); *see also Transcript, vol. 1*, at 155:2–3 (Ranger "did not pay their monthly payments since January 1st, 2022."). Mr. Pearlson testified on cross-examination that Ranger only made two payments back on its loan. *Transcript, vol. 2*, at 42–43. He testified to the same on direct examination. *Transcript, vol. 2*, at 20:10–20. Counsel for both parties agree that Ranger did not make any loan payments after January 2022. *Transcript, vol. 2*, at 90–91 (Counsel for NAC argued in closing that "[Ranger] went ahead and made two payments. . . . There was not another cent paid on this loan."); *Transcript, vol. 2*, at 99:11–14 (Counsel for Ranger in closing argued that "[Ranger] stopped . . . making payments in January of 2022.").

To summarize, the undisputed evidence[4] showed that NAC and Ranger agreed to a bargained-for exchange: NAC loaned Ranger more than $6.9 million for construction of its munitions plant, and Ranger agreed to repay NAC over time with interest. Ranger benefited from its bargain and used that money to purchase equipment, land, or pay down the loan's interest. Ranger, however, made only two minimal payments on its loan before it stopped altogether. NAC was left unpaid.

That is the whole case. Counsel for Ranger aptly summarized the case: "We understand it's a breach of contract claim. Did we breach the contract and did we cause the damages, and if so, what's the number? We understand that." *Transcript, vol. 2*, at 89:17–20. I understand that too.

---

[4] The evidence, which was heard over a two-day trial, included 103 exhibits totaling more than 1,000 pages.

And the jury agreed that Ranger had, in fact, broken its promise and breached its contract.[5] [ECF No. 87] (answering "Yes" to the question, "Do you find by a preponderance of the evidence that Defendant, Ranger Scientific, breached the terms of the contract?"). But the jury also found by a preponderance of the evidence that Plaintiff NAC did not suffer damages as a result of the breach. *Id.*

That finding is patently against the weight of the evidence and contrary to the law. The jury was instructed—and neither party objected to the final instructions—that NAC would have to prove that Ranger's "breach resulted in damages to the party who brought the suit," NAC in this case. *Transcript, vol. 2*, at 108:19–22. The jury was further instructed that NAC *may* be awarded compensatory damages, meaning "those damages that may be fairly and reasonably considered as arising naturally from the breach of the contract."[6] *Transcript, vol. 2*, at 109–10.

Based on the recitation of undisputed facts above, a rational jury could have only reached one conclusion: NAC was damaged as a result of Ranger's failure to make payments on its loan. *See Younger*, 79 F.4th 373 at 381 (A court may award judgment as a matter of law if the "*only* conclusion a reasonable jury could have reached is one in favor of the moving party." (quoting *Saunders*, 526 F.3d at 147)). NAC loaned Ranger more than $6.9 million, and Ranger agreed to repay the loan (with interest) over time. NAC provided funds to Ranger, and Ranger used them.[7]

---

[5] In opposition to NAC's motion, Ranger argues that it is unclear what term of the contract the jury found Ranger had breached. Ranger contends that if the jury believed it had breached by failing to file financial documents, then a finding of no resulting damages makes sense. This is unpersuasive for two reasons. First, the record overwhelmingly shows that the focus of the trial was Ranger's failure to repay its loan. I also instructed the jury that "North Avenue Capital claims that Ranger Scientific breached the contract by not paying back the loan -- by not making any payments since January of 2022." [ECF No. 94, at 108:5–8]. There was no objection to this instruction. Second, Ranger's theory illustrates how unsupported the jury's verdict is against the undisputed evidence.

[6] Ranger argues that NAC's motion must be denied because NAC never objected to the jury instructions. It is true that the jury was instructed that it was not "required to make an award of monetary damages." [ECF No. 94, at 110:1–3]. Ranger's argument, however, misconstrues NAC's motion. NAC argues that the jury's verdict is inconsistent with the undisputed evidence at trial and that it should be granted judgment as a matter of law. NAC does not contend that the jury instructions were flawed.

[7] To what end, the record is unclear. The munitions plant was never built, and Ranger chairman Mr. Pearlson testified that his company is dead. [ECF No. 94, at 31:1–14].

Other than two minimal payments, Ranger never made another payment. This is undisputed evidence that was presented to the jury, and it supports only a finding that NAC is entitled to a judgment and damages.

I come to this conclusion based on the entire record and the undisputed evidence viewed in the light most favorable to the nonmoving party. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 404–05 (4th Cir. 1999). I need not, nor may I, engage in "credibility determinations" or "weigh[ing] the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 140 (2000) (listing what the court cannot consider to award judgment as a matter of law). Instead, I rely on the evidence offered at trial. Here, the jury's verdict can only be justified by impermissible reliance on "speculation and conjecture."[8] *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005). Therefore, "judgment as a matter of law must be entered." *Id.* NAC's Renewed Motion for Judgment as a Matter of Law, [ECF No. 101], is **GRANTED**, and the jury's verdict is **SET ASIDE**. Accordingly, judgment is **ENTERED in favor of the Plaintiff,** North Avenue Capital, LLC.

Because I am granting the renewed motion for judgment as a matter of law, I must also conditionally rule on the alternative motion for a new trial. Federal Rule of Civil Procedure 50(c)(1) states,

> If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial.

---

[8] To be sure, the case began much more complicated than it ended. NAC had its claim, and Ranger had a counterclaim and affirmative defenses. After I granted NAC's motion for judgment as a matter of law on Ranger's counterclaim and struck Ranger's affirmative defenses, the questions posed to the jury narrowed. Through commendable lawyering, however, the jury did hear evidence of other alleged prior breaches. *See* [ECF No. 90] (a note from the jury to the court during jury deliberations) *and* [ECF No. 94, at 112–19] (addressing counsel about the note and responding to the jury). Of course, I do not speculate on the jury's deliberation as the evidence does not support its conclusion.

But the rules assure courts that this "does not affect the judgment's finality." Fed. R. Civ. P. 50(c)(2).[9] As already stated, judgment as a matter of law is the appropriate resolution of this case, and I do not find it necessary or proper to spend the judiciary's resources on a new trial. Nevertheless, Ranger owes NAC millions of dollars for a loan Ranger never paid back. Should the appellate court vacate this judgment, I would **CONDITIONALLY GRANT** NAC's motion for a new trial, [ECF No. 101], as not having a new trial would be a miscarriage of justice and the jury's verdict—as outlined—is clearly against the weight of the evidence. *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017) ("A district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice.").

### III. DAMAGES

The only question that remains is one that the jury did not reach: What is the total amount of damages suffered by NAC as a result of Ranger's breach? In its motion, NAC argues that it should be awarded $8,206,671.04. [ECF No. 102, at 6]. It comes to this conclusion by relying on:

| | |
|---|---|
| Outstanding Principal Balance | $6,919,914.97 |
| Interest (to 12/16/24) | $1,294,985.20 |
| Late Fee | $109,577.72 |
| USDA Renewal Fee | $25,132.95 |
| Reimbursable Expenses – NAC | $32,300.00 |
| LESS: M&E Reserve Balance | ($44,265.55) |
| LESS: Payment Reserve Balance | ($130,974.25) |
| Total Damages Suffered by NAC | $8,206,671.04 |

---

[9] The similarity between this requirement and an advisory opinion is striking. No other rule or procedure comes to mind that requires the district court to immediately second-guess itself or consider what it *would do* if the appellate court reverses.

[ECF No. 102, at 6] (found in NAC's memorandum in support of its motion) *see also Transcript, vol. 2*, at 94–95 (a demonstrative NAC presented to the jury during closing argument).

Put simply, compensatory damages are those fairly traceable to the breach of contract. The Supreme Court of Appeals of West Virginia has held that

> "[c]ompensatory damages recoverable by an injured party incurred through the breach of a contractual obligation are those as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things from the breach of the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of its breach."

Syl. Pt. 1, *Desco Corp. v. Harry W. Trushel Const. Co.*, 186 W. Va. 430, 431, 413 S.E.2d 85, 86 (1991) (quoting Syl. Pt. 2, *Kentucky Fried Chicken of Morgantown, Inc. v. Sellaro*, 158 W. Va. 708, 708, 214 S.E.2d 823, 824 (1975)); *see also Desco Corp.*, 186 W. Va. at 434, 413 S.E.2d at 89 (The damages rule for breach of contract is that "recovery may be obtained for those damages which either arise naturally from the breach or may reasonably have been within the contemplation of the parties at the time they made the contract.").

In this case, NAC's damages can be found in evidence as presented to the jury and undisputed between the parties.[10] The outstanding principal balance is the money actually disbursed to Ranger, $6,919,914.97. Under the Loan Agreement, Ranger agreed to pay back that money with interest. *Loan Agreement*, at 23 (Ranger "shall duly and punctually pay or cause to be paid the principal and interest of the Note . . ."); *Term Note*, at 1 ("Commencing on the 1st day of October 2021, and continuing on the 1st day of each month thereafter, payments of principal and

---

[10] At trial, Ranger took issue with the *application* of the damages assessment for myriad reasons but never took issue with the calculation itself. Ranger primarily argued that an earlier breach by NAC absolved Ranger of its duty to pay, so the damages calculation was unnecessary. Ranger also emphasized the nature of the fees (specifically prepayment penalties, which NAC did not ask for at the end of trial) and the complex nature of the Payment Reverse Account and Interest Reserve Account as well as the Controlled Account from which Ranger would be disbursed loan funds. Mostly, Ranger took issue with many provisions of the Loan Agreement it agreed to. By the end of the trial, and with the narrow question presented to the jury, these arguments fail to call into question the damages calculation presented by and sought by NAC.

interest shall be due and payable monthly, on the basis of a one hundred eighty (180) month amortization period" through October 1, 2035.). As already explained, the undisputed evidence is that Ranger did receive a direct disbursement of more than $6 million.[11] Therefore, NAC was damaged the outstanding principal balance of $6,919,914.97.

Interest on Ranger's loan began accruing at the beginning of the life of the loan, but for nearly two and a half years, the interest accrual was paid out of reserve accounts. [ECF No. 96-52, at 16] (columns M and O); *see also Loan Agreement*, at 5 (The Loan Agreement states that the loan "shall bear interest at the Applicable Interest Rate on so much of the principal sum as shall be advanced. . . ."). For the first 12 months of the loan, payments would be interest only, paid from the Interest Reserve. [ECF No. 96-52, at 16] (columns M and O). Ranger agreed to this arrangement as well as providing $830,000 to establish the Payment Reserve Account, which would exist past the interest-only period. *Loan Agreement*, at 10 (Ranger "shall enter into a Payment Reserve Account Agreement with Lender prior to closing" and "provide $830,000.00 in Loan funds to the Payment Reserve Account."); [ECF No. 95-6]. Ranger also agreed that NAC may "debit the amount of any payment under the Term Note that is not made when due from the Payment Reserve Account." [ECF No. 95-6, at 3]. And it was Ranger's obligation to maintain "at all times" and "ensure that the balance" of the Payment Reserve Account "is at least $830,000.00." *Id.*

Ranger, however, did not maintain that balance, and the balance of the account remains at $130,974.25 (which the court will credit to Ranger). NAC, in its discretion under the Payment

---

[11] At trial, Ranger argued that NAC moved money from one pocket to another through the reserve accounts, and Ranger chairman Mr. Pearlson testified that Ranger directly received around $6 million. The argument, however compelling, does not reflect the Loan Agreement. It states that NAC "may, in its sole discretion, debit the amount of any payment due under the Term Note during the interest-only period from the Controlled Account." [ECF No. 95-3, at 6]. Whatever Ranger's feelings about physically being disbursed money, the Loan Agreement—in many ways— provides for NAC to use its discretion to pay down Ranger's principal/interest. This is all for the benefit of Ranger and part of its bargained-for agreement. Therefore, those payments are properly attributed to NAC's damages.

Reserve Account Agreement, stopped debiting payments under the Term Note, and interest began to accrue. Ranger made no further payments, NAC did not apply funds from the Payment Reserve Account, and the interest grew. As a result, the interest climbed to $1,294,985.20 as of trial. [ECF No. 96-52, at 27] (adjusted based on the court's earlier order on the declaratory action).

Late fees are also assessed against Ranger for its breach up until the filing of NAC's lawsuit. *Transcript, vol. 1*, at 139:1 (Mr. Story testified on cross-examination that the "late fees were missed monthly payments."). The late fees amount to $109,577.72. Like most of the damages assessed against Ranger, this is something it agreed to pay. Under the Term Note, Ranger was required to make a "payment of principal or interest" by the tenth day of the month. *Term Note*, at 2. Failure to do so obliged Ranger to pay a "late charge of five (5%) percent of the Payment" Ranger should have made on that date. *Id.* By the time NAC stopped calculating late fees and sued Ranger, there were $109,577.72 worth of late fees.

Under the Loan Agreement, Ranger also agreed to pay an Annual Renewal Fee that NAC would pay to the United States Department of Agriculture (USDA) to maintain its guarantee of the loan. *Loan Agreement*, at 6; *see also* [95-15]. Ranger agreed to pay NAC "an amount equal to one-half of one percent (0.5%) of the Guaranteed Percent of the outstanding Loan balance" which NAC would pay to USDA "in satisfaction of the annual renewal fee charged by USDA for maintaining its guarantee of the Loan." The USDA renewal fee amounts to $25,132.95.

NAC's reimbursable expenses are $32,300. I cannot find evidence of these expenses submitted to the jury. The trial exhibit list, [ECF No. 96-1] (the parties'), and the court's exhibit list, [ECF No. 95], both reflect that NAC's attorneys' fees did not come into evidence.[12] Therefore, I cannot find that $32,300.00 is attributable as damages suffered by NAC.

---

[12] Even if these reimbursable fees are something other than attorneys' fees, that evidence is not in the record, nor does NAC's motion direct the court to a specific exhibit.

Considering the money left in the Payment Reserve Account and the M&E (Machinery and Equipment) Reserve Balance, the parties agree that $130,974.25 and $44,265.55 respectively are left. *Transcript, vol. 2*, at 77–78. That money is credited to Ranger and therefore subtracted from the total damage suffered by NAC.

Accordingly, the total amount of damages proven at trial, calculated based on the undisputed evidence, is $8,174,371.04. This is the damage naturally flowing from Ranger's breach. As such, **Plaintiff North Avenue Capital, LLC,** is **AWARDED $8,174,371.04.**

### IV.    CONCLUSION

NAC agreed to loan Ranger up to $7.5 million, and Ranger agreed to repay it over time. Ranger did not repay the loan. Instead, Ranger benefited from its agreement, and NAC is left short millions of unpaid funds. The jury's verdict is inconsistent with the evidence at trial. Therefore, Plaintiff's Renewed Motion for Judgment as a Matter of Law, [ECF No. 101], is **GRANTED**, and the jury's verdict is **SET ASIDE**.[13] Judgment is **ENTERED** in **favor of the PLAINTIFF,** North Avenue Capital, LLC, and it is **AWARDED $8,174,371.04** in damages.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:       September 16, 2025

*Joseph R. Goodwin*
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[13] The motion for a new trial is **CONDITIONALLY GRANTED**, pending resolution of a potential appeal.

Considering the money left in the Payment Reserve Account and the M&E (Machinery and Equipment) Reserve Balance, the parties agree that $130,974.25 and $44,265.55 respectively are left. *Transcript, vol. 2*, at 77–78. That money is credited to Ranger and therefore subtracted from the total damage suffered by NAC.

Accordingly, the total amount of damages proven at trial, calculated based on the undisputed evidence, is $8,174,371.04. This is the damage naturally flowing from Ranger's breach. As such, **Plaintiff North Avenue Capital, LLC,** is **AWARDED $8,174,371.04.**

### IV.    CONCLUSION

NAC agreed to loan Ranger up to $7.5 million, and Ranger agreed to repay it over time. Ranger did not repay the loan. Instead, Ranger benefited from its agreement, and NAC is left short millions of unpaid funds. The jury's verdict is inconsistent with the evidence at trial. Therefore, Plaintiff's Renewed Motion for Judgment as a Matter of Law, [ECF No. 101], is **GRANTED**, and the jury's verdict is **SET ASIDE**.[13] Judgment is **ENTERED** in **favor of the PLAINTIFF,** North Avenue Capital, LLC, and it is **AWARDED $8,174,371.04** in damages.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:       September 16, 2025

*[signature]*
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[13] The motion for a new trial is **CONDITIONALLY GRANTED**, pending resolution of a potential appeal.