IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORTH AVENUE CAPITAL, LLC,

           Plaintiff,

v.                              CIVIL ACTION NO. 2:23-cv-00015

RANGER SCIENTIFIC LLC,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the following motions: Plaintiff North Avenue Capital, LLC's ("NAC") petition for an award of attorney's fees, [ECF No. 107]; Defendant Ranger Scientific LLC's ("Ranger") motion for a new trial, [ECF No. 110]; and attorney John Richardson's motion to withdraw, [ECF No. 115]. NAC responded to Ranger's motion for a new trial, [ECF No. 114]. Ranger did not reply. The deadline to reply having passed, the matter is ripe for review. For the reasons that follow, the motion for a new trial, **[ECF No. 110]**, is **DENIED**.

    **I.**      **BACKGROUND**

Ranger's timely motion comes less than a month after the court's Memorandum Opinion and Order granting NAC's motion for judgment as a matter of law, vacating the jury's verdict, and entering judgment in favor of NAC. *North Avenue Capital, LLC v. Ranger Scientific LLC*, No. 2:23-cv-15, 2025 WL 2655456, at *6 (S.D. W. Va. Sept. 16, 2025); [ECF No. 105]. The relevant background of this case is summarized in that opinion, and I will not repeat it here. In the

Memorandum Opinion, I found that the jury's verdict was inconsistent with the evidence and entered judgment in NAC's favor. Now, Ranger moves for a new trial.

At trial, after Ranger rested its case-in-chief, the parties moved for Rule 50 judgment as a matter of law. [ECF No. 94, at 64–79] ("*Transcript, vol. 2*"). NAC argued that Ranger's counterclaim and affirmative defense failed as a matter of law on two bases. First, even if NAC breached the loan agreement first, the breach was not material and did not relieve Ranger of its obligation to repay the loan. *Transcript*, *vol. 2*, at 70–71. Second, NAC argued that Ranger's knowledge of that alleged breach and continued acceptance of funds under the loan agreement waived any first material breach by NAC. *Id.* at 72–74.

I agreed with NAC and found that Ranger had clearly waived NAC's alleged breach because it knew of the breach and continued to expect NAC to perform. *Id.* at 79–84. I explained that on the record. *Id.* Ranger now asserts that this finding was erroneous—so grievous, it argues, that I must order a new trial. [ECF No. 111, at 4]. I disagree.

## II.　LEGAL STANDARD

Generally, a court may grant a motion for a new trial on "all or some of the issues—and to any party—as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Fourth Circuit has established a three-prong standard governing Rule 59 motions:

> [I]t is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that [1] the verdict is against the clear weight of the evidence, or [2] is based upon evidence which is false, or [3] will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

*Atlas Food Sys. and Servs, Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). "When considering a motion for a new trial, the 'crucial inquiry,' particularly when employing the

third prong, is 'whether an error occurred in the conduct of the trial that was *so grievous* as to have rendered the trial unfair.'" *Cisson v. C.R. Bard, Inc.*, 86 F. Supp. 3d 510, 513–14 (S.D. W. Va. 2015) (quoting *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994) (emphasis added)). The decision rests soundly within the discretion of the district court and should be exercised "sparingly." *Id.* at 514 (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) *and United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985)).

### III. MOTION FOR NEW TRIAL

In support of its motion, Ranger advances two arguments, and to get a new trial Ranger must prevail on both. First, Ranger contends NAC's alleged breach was material and first in time. [ECF No. 111, at 7–8]. Second, Ranger argues that it did not waive any breach by NAC. *Id.* at 8–9. Ranger prevails on neither argument, and I will address them separately.

#### A. First Material Breach

A breach of contract that is "slight" or does "not go to the essence of the contract" will not relieve the nonbreaching party of its duty to perform. Syl. Pt. 4, *Triple 7 Commodities, Inc. v. High Country Mining Inc.*, 245 W. Va. 63, 67, 857 S.E.2d 403, 407 (2021). Instead, only a material breach from one party will relieve the other of its obligations under the contract. *Id.; see also In re Hopkins*, No. 3:24-cv-0065, 2024 WL 2059744, at *8 (S.D. W. Va. May 8, 2024) (Chambers, J.) ("Under West Virginia law, one party is not excused by the other party's breach of contract unless the breach is material." (citing *W. Va. Hum. Rts. Comm'n v. Smoot Coal Co.*, 186 W. Va. 348, 353, 412 S.E.2d 749, 754 (1991))).

The Supreme Court of Appeals of West Virginia has held that in determining whether a party's nonperformance is material, five "circumstances are significant." *Triple 7*, 245 W. Va. at 78, 857 S.E.2d at 418. Those circumstances are

3

> (1) the extent to which the injured party will be deprived of the benefit which it reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which it will be deprived; (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure its failure, taking account of all the circumstances including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* These considerations, although not exhaustive, enumerate the "various circumstances which inform the issue of the materiality of a party's breach or nonperformance." *Id.*

Here, Ranger alleges that NAC's miscalculation of interest, as found by the court's declaratory judgment order, is a material breach. [ECF No. 111, at 5]. This argument fails, however, as each materiality consideration weighs decisively against Ranger.

First, Ranger was not deprived of the benefit of its bargain. Indeed, Ranger is the primary beneficiary of the loan agreement, having been dispersed $7.5 million for its benefit. [ECF No. 105, at 4 (listing the many disbursements for working capital and machinery and equipment as admitted into the record)]. Ranger, still having not repaid a multi-million-dollar loan, clearly has not been deprived of its bargained-for benefit under the agreement.

Second, the alleged breach was an interest miscalculation, the type of injury that can be easily identified, quantified, and remedied. This is sufficient under the *Triple 7* inquiry which asks only whether an injured party "*can be* adequately compensated" for the deprivation. *Triple 7*, 245 W. Va. at 78, 857 S.E.2d at 418. In fact, following the court's order, NAC did rectify its mistaken calculation and re-amortize the interest schedule. [ECF No. 93, at 105:16–19]; [ECF No. 96-52] (Exhibit 101, the revised amortization). Because the error was easily identified and remedied, this circumstance cuts against Ranger's claim that the alleged breach was material.

Third, for the same reasons discussed above, the consideration of forfeiture cuts against Ranger. If I were to find that NAC's alleged breach was material, then Ranger could potentially

enjoy a windfall of millions of dollars. That would transform a small, technical—and remedied—mistake into a lucky break for the borrower. At the same time, the lender, here NAC, would have forfeited millions. Such a result is illogical and unjust. Therefore, this consideration clearly weighs against Ranger.

Fourth, as already discussed, NAC cured its error promptly following the court's judgment, and Ranger enjoyed the benefit of a re-amortized schedule under the corrected interest calculation. Finally, there is no evidence that NAC acted outside the expectations of good faith and fair dealing in its agreement. NAC never refused a disbursement to Ranger, even as Ranger disputed the interest calculation and made only two loan repayments. *Transcript, vol. 2*, at 29–30. Accordingly, these final considerations also cut against Ranger.

More generally, the circumstances considered above illustrate a sensible rule of contracts law: a nonbreaching party cannot escape its obligations under a contract when the other party has committed only a small, technical breach that is quickly and reasonably fixed. This principle is especially applicable when the nonbreaching party has entirely benefited from the contract without performing its own duty. That is the case here. The five enumerated circumstances considered above do not justify transforming a small error into a material breach, allowing Ranger to walk away with millions. Therefore, I find that NAC's alleged breach was not material, and Ranger's affirmative defense was properly struck because NAC did not commit a first material breach. Accordingly, Ranger's motion, **[ECF No. 110]**, is **DENIED**.

### B.  Waiver

Even if I were to assume that NAC committed a first material breach, I find that Ranger waived it. A nonbreaching party may waive a first material breach. In *Triple 7*, the Supreme Court of Appeals of West Virginia "specifically further discussed the well-recognized principle that first

5

material breach may be waived by continued performance." *Blackrock Enters., LLC v. BB Land, LLC*, 250 W. Va. 123, 136, 902 S.E.2d 455, 468 (2024). The court explained:

> It is well-established that "[i]f the [nonbreaching] party elects to continue with the contract, it cannot later suspend performance and then claim that it had no duty to perform based upon the first material breach. That defense is waived when the party elects to continue performance of the contract." *Maverick Benefit Advisors, LLC v. Bostrom*, 382 P.3d 753, 759 (Wyo. 2016); *see also Atl. Bitulithic Co. v. Town of Edgewood*, 103 W. Va. 137, 143, 137 S.E. 223, 225 (1927) ("There is no breach so long as the injured party elects to treat the contract as continuing.").

*Triple 7*, 245 W. Va. at 78, 857 S.E.2d at 418. Relying on *Triple 7*, the court held in *Blackrock* that the general rule of a first material breach relieving the nonbreaching party of performance "does not apply when the non-breaching party, with knowledge of the facts, either performs or indicates a willingness to do so despite the breach or insists that the breaching party continue to render future performance." *Blackrock*, 250 W. Va. at 136, 902 S.E. 2d at 468 (adopting a leading treatise, Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 43:15 (4th ed. 2013), summarized in *Triple 7*).

After Ranger rested its case-in-chief, I found that Ranger had waived any alleged breach by NAC under West Virginia case law because Ranger knew of that alleged breach and continued to benefit from, and expected to benefit from, its loan agreement. *Transcript, vol. 2*, at 79–84. I decline to reverse myself now.[1]

Ranger's argument is simply one of timing: Ranger asserts that after it had received more than $6 million of the loan directly, it *then* did not expect to benefit from the loan any longer because NAC filed a declaratory judgment action. This argument, however, is largely revisionist history.[2] The subject of the declaratory action was to determine the proper interest calculation—

---

[1] In addition to the discussion here, I incorporate my analysis on the record found at *Transcript, vol. 2*, at 79–84.
[2] This has been the crux of Ranger's argument throughout the litigation. Having solely benefited from the loan agreement with NAC, Ranger now hopes to craft a legal justification for not paying it back. To subscribe to this argument would let Ranger have its cake and eat it too—an inequitable resolution and the antithesis of contract law.

the exact disagreement between the parties since at least January 2021. *Transcript*, vol. 2, at 13–14. Despite that disagreement, Ranger continued to benefit from its bargained-for exchange. *See* [ECF No. 95, exhibits 33–41]; *Transcript, vol. 2*, at 48–51 (Counsel for NAC walking through multiple exhibits of NAC's disbursements to Ranger after January 2021.).

That is waiver. Ranger had "knowledge of the facts" of the alleged breach and actively engaged with NAC over their disagreement. *Blackrock*, 250 W. Va. at 136, 902 S.E. 2d at 468. At the same time, Ranger made disbursement requests under the same loan agreement, all of which NAC fulfilled. This continued relationship under the loan agreement clearly indicates that Ranger "insist[ed] that [NAC] continue to render future performance." *Id*. And in fact, NAC continued to perform.

Therefore, even if NAC committed a first material breach, I find that Ranger waived that breach by continuing to expect performance and actually benefitting from the loan agreement. Ranger's affirmative defense was appropriately struck after the close of evidence. Accordingly, Ranger's motion, **[ECF No. 110]**, is **DENIED**.

## IV. PETITION FOR ATTORNEY'S FEES

NAC has filed a petition for an award of attorney's fees, [ECF No. 107]. Ranger responded, but its response was not substantive. [ECF No. 112]. Instead, Ranger asks the court to deny the motion or hold it in abeyance pending resolution of its motion for a new trial. *Id.*

Procedurally, NAC's motion is proper, and Ranger should have substantively responded. Fed. R. Civ. P. 54(d)(2)(B)(i) (A "claim for attorney's fees" must be made by a motion "filed no later than 14 days after the entry of judgment."). Nevertheless, the court seeks to resolve the motion promptly on the merits. Therefore, Ranger is **DIRECTED** to substantively respond to NAC's

motion **no later than 14 days after** the filing of this Memorandum Opinion and Order. NAC may then file a reply no later than seven days after Ranger's response.

V.  **MOTION TO WITHDRAW**

Attorney John Richardson moves to withdraw from representation of NAC, [ECF No. 115], because his law firm no longer represents NAC. Under the local rules, an "attorney may withdraw from a case in which he or she has appeared" by notice as long as "multiple attorneys have appeared on behalf of the party" and there is still "at least one" attorney representing that party. Loc. R. Civ. P. 83.4(a). Here, NAC will still be represented by other attorneys, so notice from the withdrawing attorney alone would be sufficient. Nonetheless, the court **GRANTS** the motion, **[ECF No. 115]**. The Clerk is **DIRECTED** to terminate on the docket Mr. John Richardson and Mr. John Randall Whipkey as counsel for NAC.

VI.  **CONCLUSION**

Ranger asks this court to reverse itself and reward Ranger with a new trial. Ranger bases its whole argument on an alleged breach that NAC quickly—and in good faith—remedied, all while Ranger enjoyed the benefit of a $7.5 million disbursement under the loan agreement. Not only is this result unjust, but it is untenable under West Virginia law.

Therefore, Ranger's Motion for a New Trial, **[ECF No. 110]**, is **DENIED**. Attorney John Richardson's Motion to Withdraw, **[ECF No. 115]**, is **GRANTED**. Ranger is **DIRECTED** to file a substantive response to NAC's Petition, [ECF No. 107], **no later than 14 days after** this Memorandum Opinion and Order is filed.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:   November 13, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

8